UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LENA TURNER GAFFNEY WIFE                    CIVIL ACTION
OF/AND JAMES L. GAFFNEY III


VERSUS                                       NO: 06-8143


STATE FARM FIRE AND CASUALTY                SECTION: R(5)
COMPANY


**ORDER AND REASONS**

Before the Court is defendant's motion for partial summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure. For the following reasons, the Court GRANTS in part and DENIES in part defendant's motion.


**I.   BACKGROUND**

Plaintiffs Lena and James Gaffney are Louisiana homeowners whose house was severely damaged by Hurricane Katrina. The Gaffneys' one-story house was located at 210 Hay Place in the Lakeview neighborhood of New Orleans, a few blocks east of the 17th Street Canal and roughly one mile north of where the canal levee broke after the storm, flooding a large portion of the city. Due to extensive damage caused by the storm, plaintiffs home was eventually demolished.

The Gaffneys insured their house under a homeowner's policy and separate flood policy, both issued by defendant State Farm

Fire and Casualty Company. The homeowner's policy contained coverage limits of $132,000 on the dwelling, $99,000 on contents or personal property, and $13,200 on the dwelling extension. It also covered plaintiffs' actual living expenses in the event that plaintiffs lost the use of their home. The Gaffneys' homeowner's policy contained a flood exclusion clause and specified that the dwelling and contents coverage did not insure against water damage, which the policy defined as damage resulting from "flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not."[1] The policy also specified that it did not cover damage to the "land necessary to support" plaintiffs' dwelling.[2] The Gaffneys carried $132,000 in dwelling coverage under their flood policy. They did not carry contents coverage for flood damage.

Shortly after the storm, the Gaffneys filed claims with State Farm under their homeowner's and flood policies. State Farm paid the Gaffneys $132,000 for flood damage — the full limit of

---

[1] Def.'s Mem. Supp. Ex. A, "Homeowner's Policy: Section I — Losses Not Insured" at 10, R. Doc. 26-14 at 15.

[2] Def.'s Mem. Supp. Ex. A, "Homeowner's Policy: Section I — Coverages" at 3, R. Doc. 26-14 at 8.

their flood policy — on October 14, 2005.[3] Approximately two months later on December 21, 2005, State Farm paid plaintiffs $36,262.14 for dwelling damage. Six months later on June 15, 2006 after a mediation session with plaintiffs, State Farm paid an additional $3,710.59 for dwelling damage, resulting in a total of $39,972.73 paid to the Gaffneys under their homeowner's policy for damage to their dwelling. Also in December 2005, State Farm paid plaintiffs $545.00 under their personal property coverage for spoiled food. All told, State Farm paid the Gaffneys a total of $172,517.73 for damage to their house and its contents under their homeowner's and flood policies.[4]

On August 23, 2006, the Gaffneys brought suit against State Farm. They assert that the payments they have received thus far from State Farm under both their homeowner's and flood policies have not fully compensated them for their covered losses. They allege that the pre-storm value of their home was $226,940.04, and that the full replacement cost is $232,575.00. Plaintiffs contend that the approximate total of $172,000 that State Farm has paid them under both their flood and homeowner's policies falls short of their actual covered loss. In addition to their

---

[3] Def.'s Ex. C, R. Doc. 26-6.

[4] State Farm also paid plaintiffs $3,818.00 for additional living expenses.

breach of insurance contract claim on their homeowner's policy, plaintiffs assert causes of action under La. Rev. Stat. §§ 22:658 and 22:1220 for State Farm's alleged arbitrary or capricious failure to properly adjust and timely pay their claim after it received satisfactory proof of loss. They seek attorney's fees under § 22:658, as well as general damages under § 22:1220. Finally, plaintiffs contend that hurricane winds rendered their home a total loss, and they assert a claim under Louisiana's Valued Policy Law (VPL), La. Rev. Stat. § 22:695.

State Farm now moves for partial summary judgment on several issues in this matter. Specifically, it argues: (1) that it cannot be held liable for any further damages to plaintiffs' house under the homeowner's policy because it has already paid more than the value of plaintiffs' house and that plaintiffs may not invoke Louisiana's VPL; (2) that it does not owe plaintiffs any further payments for damage to their personal property because their home contents were damaged by flood waters, which is a non-covered peril under their homeowner's policy; (3) that even if plaintiffs are able to show that State Farm acted arbitrarily or capriciously in adjusting their claim, they cannot recover penalties under both § 22:658 and § 22:1220, but only one or the other; and (4) that plaintiffs' claims may be brought only under the pre-Katrina version of § 22:658 and therefore they are

4

not entitled to attorney's fees. The Court rules on these issues as follows.

## II.  LEGAL STANDARDS

### A.  Applying Louisiana Law

Because jurisdiction is based on diversity, Louisiana law applies to the substantive issues before the Court. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In Louisiana, the sources of law are legislation and custom. *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546 (5th Cir. 2004). These authoritative or primary sources of law are to be "contrasted with persuasive or secondary sources of law, such as [Louisiana and other civil law] jurisprudence, doctrine, conventional usages, and equity, that may guide the court in reaching a decision in the absence of legislation and custom." *Id.* (quoting La. Civ. Code art. 1). In Louisiana, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes." *Id.* (quoting *Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.*, 179 F.3d 169, 174 (5th Cir. 1999)). To make an "*Erie* guess" on an issue of Louisiana law, the Court must "employ the appropriate Louisiana methodology" to decide the issue the way that it believes the Supreme Court of Louisiana would decide it. *Id.* (quoting *Lake Charles Diesel, Inc.*

*v. Gen. Motors Corp.*, 328 F.3d 192, 197 (5th Cir. 2003)).

**B.    Summary Judgment**

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue

exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

## III. DISCUSSION

### A. Whether Plaintiffs May Recover Any Further Payment for Dwelling Damage under Their Homeowner's Policy

State Farm contends that the Gaffneys are not entitled to recover any further payment under their homeowner's policy. State Farm asserts that plaintiffs have already received compensation in excess of the pre-storm value of their property. Any further payment, State Farm argues, would amount to a double recovery and windfall to the Gaffneys. State Farm also argues that plaintiffs may not invoke Louisiana's Valued Policy Law, La. Rev. Stat § 22:695, because their house was not rendered a total loss by a covered peril under the plaintiffs' homeowner's policy.

The dispute between State Farm and the Gaffneys is essentially over the value of the Gaffneys' house. The Gaffneys maintain that their dwelling is worth $226,940.04,[5] whereas State

---

[5] *See* Pls.' Mem. Opp., R. Doc. 32 at 5.

Farm asserts that it is worth only $100,000.[6] It is undisputed that State Farm has paid the Gaffneys more than $172,000 under both the plaintiffs' flood and homeowner's policies. As State Farm points out, it is well-established that insurance contracts are contracts of indemnity. *See, e.g., Berkshire Mut. Ins. Co. v. Moffett*, 378 F.2d 1007, 1011 (5th Cir. 1967); *Wright v. Assurance Co. of Am.*, 728 So. 2d 974, 975 (La. Ct. App. 1999). And it is also true that an insured cannot recover for the same loss twice under a contract for property insurance. *See, e.g., Cole v. Celotex Corp.*, 599 So. 2d 1058, 1080 ("As a general rule, the claimant may recover under all available coverages provided that there is no double recovery."); *Wellmeyer v. Allstate Ins. Co.*, Civ. Action No. 06-1585, 2007 WL 1235042, at *3 (E.D. La. Apr. 26, 2007) (noting that "an insured cannot recover twice for a single loss").

The Court need not resolve the factual dispute over the value of plaintiffs' house to dispose of plaintiffs' complaint regarding dwelling damages. Instead, plaintiffs' theory of the case limits their recovery. Plaintiffs posit that hurricane winds, not the flood, caused their total loss. They assert that

---

[6] *See* Def.'s Mem. Supp. Ex. A, "Residential Appraisal Report," R. Doc. 26-10. State Farm's appraisers estimated the value of plaintiffs' lot to be an additional $100,000.

their "residence was knocked off its foundations rendering it [a] total loss *before* being inundated by water" and thus there is "no factual basis whatsoever for the application of the flood exclusion" under the homeowner's policy.[7] Plaintiffs have submitted the report of a civil engineer who concludes that, based on the trees that fell on plaintiffs' house and the type of damage sustained by nearby houses that also stood in the path of advancing floodwaters, it is more likely than not that hurricane winds destroyed plaintiffs' home beyond repair.[8] Nevertheless, plaintiffs have been paid the dwelling limits of $132,000 under their flood policy. Under that scenario, as the Court instructed the jury in *Weiss v. Allstate Insurance Co.*, Civ. Action No. 06-3774, the factfinder must offset the plaintiffs' recovery by the amount they have received under the flood policy. *See Weiss v. Allstate Ins. Co.*, Civ. Action No. 06-3774, "Court's Jury Charges," R. Doc. 189 at 11. *See also Esposito v. Allstate Ins. Co.*, Civ. Action No. 06-1837, 2007 WL 1125761, at *2 (E.D. La. Apr. 16, 2007) (explaining that plaintiff "is entitled to recover

_____

[7] *See* Pls.' Mem. Opp., R. Doc. 32 at 6 (emphasis in original). *See also* Pls.' Cmplt. at ¶ 3, R. Doc. 1-2 at 1 (alleging that plaintiffs' property was "damaged by the winds of Hurricane Katrina).

[8] *See* Pls. Mem. Opp. Ex. 6, Cressy Report Aug. 1, 2007 at ¶ 12, R. Doc. 32-6 at 3.

. . . any *previously uncompensated* losses that are covered by his homeowner's policy *and which when combined with his flood proceeds do not exceed the value of his property*") (emphasis in original); *Wellmeyer*, 2007 WL 1235042, at *3 (allowing plaintiffs' claim under homeowner's policy to proceed after receiving payment under flood policy only if they could show that a covered peril "caused uncompensated damage"). This is not a situation in which plaintiffs claim that flooding caused separable losses up to their flood limits, wind caused losses up to their homeowner's limits, and the property was worth at least the sum of the two types of losses. Plaintiffs claim that wind caused *all* of their losses, not flooding. If that is the case, were plaintiffs allowed to recover up to the limits of both policies, they would be compensated twice for the same loss. For this reason, the most plaintiffs can recover if they prove their case is the limits of the homeowner's policy less the amounts they have already received. Plaintiffs' dwelling limits under their homeowner's policy were $132,000, or 110 percent of $132,000, if plaintiffs fully replaced their property.[9] Plaintiffs have already received $132,000 under their flood

---

[9] *See* Def.'s Mem. Supp. Ex. A, "Homeowner's Policy: Coverage A Loss Settlement Endorsement Option ID — Increased Dwelling Limit," R. Doc. 26-14 at 33.

policy and $39,922.73 for the dwelling under their homeowner's policy. That amount exceeds 110 percent of $132,000, which is the maximum they could recover for their dwelling under their homeowner's policy. Accordingly, they are not due any additional payment for dwelling damage under their homeowner's policy.

Further, Louisiana's VPL does not change this result. Louisiana's VPL provides, in pertinent part, that under any fire or homeowner's insurance policy insuring immovable property,

> if the insurer places a valuation upon the covered property and uses such valuation for the purposes of determining the premium charge to be made under the policy, in the case of total loss the insurer shall compute and indemnify or compensate any covered loss of, or damage to, such property which occurs during the term of the policy at such valuation without deduction or offset, unless a different method is to be used in the computation of the loss, in which latter case, the policy, and any application therefor, shall set forth in type of equal size, the actual method of such loss computation by the insurer.

La. Rev. Stat. § 22:695(A). The VPL prevents an insurer, in the event of a total loss, from determining the loss at a value different from the value of the home listed on the policy, unless certain steps are taken. *See id.* (stating requirements for setting forth a method of loss computation in insurance policy different from statutory rule). *See also Scottsdale Ins. Co. v. Wasserman*, No. Civ. A. 97-1803, 1997 WL 722940, at *2 (E.D. La. Nov. 17, 1997) (explaining that it is necessary to analyze the endorsements of an insurance policy to determine whether an

exception to the VPL applies). In other words, when it applies, the law bars the parties to an insurance contract from arguing after the loss that the insured property actually had a greater or lesser value than the policy amount. Thus, it encourages insurers to take steps to accurately assess risks and issue the correct amount of insurance. *See Chauvin v. State Farm Fire & Cas. Co.*, 450 F. Supp. 2d 660, 667 (E.D. La. 2006) (quoting *Atlas Lubricant Corp. v. Fed. Ins. Co.*, 293 So. 2d 550, 556 (La. Ct. App. 1974) ("The legislative intent . . . was to prevent over-insurance and other abuses . . . [and to] encourage insurers and producers to inspect risks and assist prospective insureds in determining insurable value of properties.")).

Plaintiffs have cited no authority for the proposition that the VPL authorizes them to recover twice for the same loss. The VPL does not address the situation presented here, and does not change the basic principle that plaintiffs cannot have it both ways, *i.e.*, treating the loss as caused totally by wind when they litigate the homeowner's policy, but accepting their flood limits as though the loss were caused by flood under the policy.

**B.   Whether Plaintiffs Are Entitled to Recover Any Further Payment under the Homeowner's Policy for Damage to Their Personal Property**

State Farm next argues that plaintiffs may not recover any

additional payment under their homeowner's policy for damage to their personal property because the contents of their home were damaged as a result of flooding, which is a non-covered peril under the personal property portion of their homeowner's policy. State Farm asserts that the Gaffneys' house "received approximately peak flood waters of 15 [feet] as a result of Hurricane Katrina."[10] Thus, it maintains, since the Gaffneys' homeowner's policy excluded personal property from coverage for flood damage, they are not entitled to any further compensation for damage to their belongings.

Under Louisiana law, an insurance policy is a contract that constitutes the law between the parties, and it must be interpreted in accordance with the general rules of contract interpretation set forth in the Louisiana Civil Code. *See Peterson v. Schimek*, 729 So. 2d 1024, 1028 (La. 1999) (citing La. Civ. Code art. 1793; *Ledbetter v. Concord Gen. Corp.*, 665 So. 2d 1166, 1169 (La. 1996); *Crabtree v. State Farm Ins. Co.*, 632 So. 2d 736 (La. 1994)); *Pareti v. Sentry Indem. Co.*, 536 So. 2d 417, 420 (La. 1988). The extent of insurance coverage is determined by the parties' intent as reflected by words in the policy. *See* La. Civ. Code art. 2045; *Peterson*, 729 So. 2d at 1028 (citing

---

[10] Def.'s Mem. Supp., R. Doc. 26-3 at 11.

13

*Ledbetter*, 665 So. 2d at 1169). If the policy wording is clear, and it expresses the intent of the parties, the agreement must be enforced as written. La. Civ. Code art. 2046; Pareti, 536 So. 2d at 420. The policy must be construed as a whole, and one portion should not be construed separately at the expense of disregarding another. *Pareti*, 536 So. 2d at 420. If an ambiguity exists, the ambiguity must be construed in favor of the party seeking coverage. *Id.* The Court may not alter the terms of the policy under the guise of contract interpretation when the language of the policy is unambiguous. *Id.*

It is clear that the water damage exclusion provision of plaintiff's homeowner's policy applies to their personal property. The policy states that State Farm shall "insure for accidental direct physical loss to the property described in Coverage B, except as provided in SECTION I — LOSSES NOT INSURED."[11] Plaintiffs' policy then lists and defines covered perils under "Coverage B," including "windstorm and hail" among other risks. Under SECTION I — LOSSES NOT INSURED, it states, in pertinent part:

> 2.   We do not insure under any coverage for any loss which
>      would not have occurred in the absence of one or more
>      of the following excluded events. We do not insure for

---

[11] Def.'s Mem. Supp. Ex. A, "Homeowner's Policy: Section I — Losses Insured" at 7, R. Doc. 26-14 at 12.

> such loss regardless of: (a) the cause of the excluded
> event; or (b) other causes of the loss; or (c) whether
> other causes acted concurrently or in any sequence with
> the excluded event to produce the loss; or (d) whether
> the event occurs suddenly or gradually, involves
> isolated or widespread damage, arises from natural or
> external forces, or occurs as a result of any
> combination of these:
>
> c.   Water Damage, meaning:
>      (1) flood, surface water, waves, tidal water,
>      tsunami, seiche, overflow of a body of water, or
>      spray from any of these, all whether driven by
>      wind or not.[12]

The Court has no difficulty in concurring with the views of other courts, *see, e.g., Bilbe v. Belsom*, Civ. Action No. 06-7596, 2007 WL 2042437, at *4 (E.D. La. July 12, 2007), that this policy language clearly and unambiguously excludes personal property coverage for damage caused by flooding. It expressly states that Sate Farm will "not insure under *any* coverage for *any* loss which would not have occurred in the absence" of flooding.

Plaintiffs do not dispute that the water damage exclusion provision applies, in general, to their personal property as well as their dwelling coverage or that their home flooded after the storm. Instead, they contend that wind-driven rain damaged some of the contents of their home that were untouched by flood waters. Just as the flood exclusion clause is unambiguous, so too

---

[12] Def.'s Mem. Supp. Ex. A, "Homeowner's Policy: Section I — Losses Insured" at 7, R. Doc. 26-14 at 12.

is the provision in Coverage B — Personal Property that defines
windstorm as a covered peril. It states that the plaintiffs'
personal property damaged by wind is covered, subject to the
following condition:

> 2.   Windstorm or hail. This peril does not include loss to
> property contained in a building caused by rain, snow,
> sleet, sand or dust. This limitation does not apply
> when the direct force of wind or hail damages the
> building causing an opening in a roof or wall and the
> rain, snow, sleet, sand or dust enters through this
> opening.[13]

Plaintiffs have introduced evidence that hurricane winds caused
openings and cracks in their roofs and walls that allowed rain to
enter through these openings. According to deposition testimony
of one of their neighbors, trees collapsed on plaintiffs' house
before the canal levee broke.[14] Plaintiffs have also submitted
multiple photographs that show trees resting on the roof and side
of their house.[15] Mrs. Gaffney, who is severely visually impaired
but can still perceive light changes, stated in a deposition that
she could see beams of light entering the otherwise dark rooms

---

[13] Def.'s Mem. Supp. Ex. A, "Homeowner's Policy: Section I —
Losses Insured" at 7, R. Doc. 26-14 at 12.

[14] *See* Pls.' Mem. Opp. Ex. 3, Henninger Dep. Apr. 20, 2007
at 142, 148, R. Doc. 32-3 at 2, 6.

[15] *See* Pls.' Mem. Opp. Exs. 2, 4, R. Docs. 32-2, 32-4.

and attic of her house through cracks in the roof and walls.[16] Both Mrs. Gaffney and Mr. Gaffney have further stated in deposition testimony that items of personal property that were elevated above the floodline still suffered water damage and that the interior ceilings of their home had collapsed.[17] The parties dispute the height of the floodwaters in plaintiffs' home. State Farm asserts at different points in its briefs that plaintiffs house was inundated by at least fifteen feet of water, then twelve feet.[18] A document submitted by State Farm titled "Flood Claim Worksheet" states that the interior and exterior water lines on plaintiffs' house were twelve and fifteen feet, respectively.[19] Yet State Farm does not explain who prepared this report or the source of this information. Elsewhere, State Farm contends that Mr. Gaffney stated in his deposition that the floodline in his home was as high as eight feet.[20] But it does

---

[16] *See* Pls.' Mem. Opp. Exs. 13, 14, Lena Gaffney Dep. Feb. 28, 2007 at 23, 32, 33, R. Docs. 32-13 at 2, R. Doc 32-14 at 32, 33.

[17] *See id.*, R. Doc. 32-14 at 8-9; Pls.' Mem. Opp. Exs. 11, 12, James Gaffney Dep. Feb. 28, 2007 at 26, 65, 66, 87, 99, 102 R. Doc. 32-11 at 2, R. Doc. 32-12 at 1-6.

[18] *See* Def.'s Mem. Supp., R. Doc. 26-3 at 5, 11.

[19] *See* Def.'s Mme. Supp. Ex. H, "Flood Claim Worksheet," R. Doc. 26-11.

[20] *See* Def.'s Reply Mem., R. Doc. 35 at 5.

17

not offer Mr. Gaffney's deposition in support of this contention. In contrast, at one point in his deposition, Mr. Gaffney indicates that the waterline inside his house did not exceed five feet.[21] In addition, Mrs. Gaffney states that the water "didn't even go to the top of the windows."[22] How high the windows on plaintiffs' house were and how high the waters rose inside their house is unclear.

State Farm has not shown that there are no issues of material fact that the damages to the contents of plaintiffs' home were not covered by their homeowner's policy. Depending on the evidence of the floodline, the location of the contents, and the wind-caused structural damage, a jury might find that plaintiffs are entitled to recover for some of the contents of their home. But based on this record, summary judgment on this issue is inappropriate at this time.

**C.    Whether Plaintiffs May Recover Penalties under Both La. Rev. Stat. §§ 22:658 and 22:1220**

State Farm further argues that, even assuming plaintiffs can show that State Farm acted in an arbitrary and capricious manner in adjusting their claims, plaintiffs may not recover penalties

---

[21] *See* Pls.' Mem. Opp. Ex. 12, James Gaffney Dep. Feb. 28, 2007 at 66, R. Doc. 32-12 at 66.

[22] *See* Pls. Mem. Opp. Ex. 14, Lena Gaffney Dep. Feb. 28, 2007 at 36, R. Doc. 32-14 at 8.

under both La. Rev. Stat. §§ 22:658 and 22:1220. Plaintiffs do
not respond to State Farm's argument in their opposition brief.
The versions of §§ 22:658 and 22:1220 in effect at the time of
State Farm's allegedly arbitrary and capricious adjustment of
plaintiffs' claims respectively provided that an insurer could be
held liable for twenty-five percent of the damages caused for
failing to adjust and pay a claim within thirty days of receiving
a satisfactory proof of loss or twice the damages for failing to
do so within sixty days of receipt of proof of loss. In *Calogero
v. Safeway Insurance Co. of Louisiana*, 753 So. 2d 170 (La. 2000),
the Louisiana Supreme Court held that because the two statutes
sanction essentially the same conduct, a plaintiff "cannot
recover penalties under both statutes," but instead that §
22:1220 supercedes § 22:658 because it affords a higher penalty.
*Id.* at 174. Accordingly, plaintiffs are barred, as a matter of
law, from recovering penalties under both provisions.

>    **D.   Whether Plaintiffs May Recover Attorney's Fees under
>          the 2006 Amendments to La. Rev. Stat. § 22:658**

Finally, State Farm argues that plaintiffs may not recover
attorney's fees under the current version of La. Rev. Stat. §
22:658. On August 15, 2006, the current version of § 22:658 went
into effect. It provides that an insurer may be held liable for
attorney's fees and costs as well as penalties for failure to

properly adjust and pay on a claim within thirty days after receipt of satisfactory proof of loss. *See* La. Rev. Stat. § 22:658(B)(1) (2007). The version of § 22:658 in effect during the period in which plaintiffs filed their claims and State Farm issued payments did not provide plaintiffs with the right to recover attorney's fees. As discussed, *supra*, it entitled plaintiffs to recover twenty-five percent of the damages caused by an insurer's failure to pay on a claim within thirty days after receipt of a satisfactory proof of loss. *See* La. Rev. Stat. § 22:658(B)(1)(2005). Plaintiffs filed their claims shortly after the storm, and State Farm made payments in October and December 2005, well before the 2006 amendments took effect. This Court has previously explained that there is no indication that the Louisiana legislature intended for the 2006 amendments to § 22:658 to apply retroactively to causes of action that accrued before the revised law went into effect. *See Broussard v. State Farm Fire and Cas. Co.*, Civ. Action No. 06-8084, 2007 WL 2264535, at *8. Plaintiffs argue that State Farm has an "ongoing" duty to fully compensate them under their homeowner's policy, and therefore, because State Farm still has not paid plaintiffs what they are allegedly due, revised § 22:658 applies. Plaintiffs are mistaken. The Louisiana Supreme Court has explained that "the determinative point in time separating prospective from

retroactive application of an enactment is the date the cause of action accrues." *Cole v. Celotex*, 599 So. 2d 1058, 1063 (La. 1992); *see also Brown v. RJ Reynolds Tobacco Co.*, 52 F.3d 524, 527 (5th Cir. 1995) ("A cause of action accrues when a plaintiff may bring a lawsuit."). Under § 22:658, plaintiffs' cause of action accrued when State Farm failed to make payment on plaintiffs' claim within 30 days of receiving a satisfactory proof of loss. Based on the parties' representations in their briefs and the December 21, 2005 payment that State Farm issued, plaintiffs' cause of action accrued several months before the current version of § 22:658 went into effect. Therefore, plaintiffs may not recover attorney's fees under the 2006 amendments to § 22:658, and State Farm is entitled to summary judgment on this issue.

**IV.   CONCLUSION**

For the foregoing reasons, the Court GRANTS in part and DENIES in part State Farm's motion for partial summary judgment.

New Orleans, Louisiana, this __7th__ day of April, 2008.

_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

21